IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| S.K.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 3:24-CV-092-BR |
| | § | |
| MARTIN O'MALLEY, | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING THE DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff S.K. ("Plaintiff") seeks judicial review of the decision of the Commissioner of Social Security ("Defendant"), who denied Plaintiff's applications for disability insurance benefits under Title II and for supplemental security income under Title XVI of the Social Security Act ("SSA") for lack of disability. (ECF 1; ECF 9-1 at 23-37). The parties voluntarily consented to have the undersigned conduct all proceedings in this case to disposition in accordance with the provisions of 28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73. (ECF 5). After considering the pleadings, briefs, and administrative record, the Court AFFIRMS the Commissioner's decision.

**I.   BACKGROUND**

Plaintiff filed a claim for Title II disability and disability insurance benefits on October 16, 2020, alleging disability due to: Bipolar I Disorder—Manic Depression; Major Depressive

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

Disorder (MDD); Diabetes Mellitus—Type 2; Generalized Anxiety Disorder (GAD); hypertension; disc problems in her back; problems with both knees; and Plantar Fasciitis in the left foot. (ECF 14 at 1-2). Plaintiff alleged an onset date of July 20, 2020. (ECF 11-1 at 13). Plaintiff was born on February 22, 1969, was 51 years old at the time she filed her claim, and has at least a high school education. (*Id.* at 27).

Plaintiff's application was initially denied on April 19, 2021, (ECF 11-1 at 119), and was denied again upon reconsideration on October 13, 2021. (*Id.* at 135). Plaintiff requested a hearing, which was held before the Administrative Law Judge ("ALJ") on May 2, 2022. (*Id.* at 66-87). The ALJ issued an unfavorable decision on May 26, 2022, and the Appeals Council remanded that decision on November 4, 2022.[2] (*Id.* at 138-141). Another hearing was held before the ALJ on May 2, 2023. (*Id.* at 39-63). The ALJ issued a second unfavorable decision on July 11, 2023, finding Plaintiff not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (*Id.* at 13-21).

At step one of the five-step sequential evaluation,[3] the ALJ found that the claimant had not engaged in substantial gainful activity since July 20, 2020, the alleged onset date. (ECF 11-1 at

---

[2] In the remand order, the Appeals Council noted that Plaintiff's counsel objected to the testimony of the vocational expert during the May 2, 2022, hearing, but that neither the record nor the hearing decision reflected consideration of the objection. (ECF 11-1 at 140). On remand, the ALJ was directed to issue a new decision and rule on any objections to the vocational evidence. (*Id.*).

[3] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the burden of proof in establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff is capable of performing. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)). Before proceeding to steps four and five, the Commissioner must assess a claimant's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

16). At step two, the ALJ found that Plaintiff has several "severe impairments": lumbar spondylosis, left knee osteoarthritis, diabetes, obesity, plantar fasciitis, bipolar disorder, and anxiety disorder. (*Id.*). At step three, however, the ALJ found that Plaintiff's impairments—or combination of impairments—did not meet or medically equal the severity of any listed impairment in the social security regulations. (*Id.* at 20-21). At step four, the ALJ determined that Plaintiff is unable to perform past relevant work as a sales clerk. (*Id.* at 26-27). At step five, the ALJ determined that, considering the claimant's age, education, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.* at 27). The ALJ determined that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and therefore is not disabled within the meaning of the Social Security Act. (*Id.* at 28).

The Appeals Council denied Plaintiff's request for review on November 22, 2023. (ECF 11-1 at 1-5). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See* 42 U.S.C. §§ 405(g), 1383(c); *Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) ("[C]ourts generally agree that when the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision.") (quoting *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005)).

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is defined as a work activity involving

significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b).

In reviewing disability determinations by the Commissioner, the court's role is limited to determining (1) whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and ultimate decision, and (2) whether the Commissioner applied the correct legal standards or if any errors of law were made. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).

To determine whether substantial evidence of disability exists, the court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. If the court finds substantial evidence to support the Commissioner's

decision, the court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

### III. DISCUSSION

In her Complaint, Plaintiff requests that this Court find that she is entitled to social security disability benefits and supplemental security income benefits or remand this case for further hearing. (ECF 1 at 1-2). In her Opening Brief, Plaintiff asserts two grounds for reversal and remand: 1) the ALJ failed to properly develop the record and based the mental RFC on his own lay interpretation of the medical evidence, declining to either order a consultative examination or obtain medical expert testimony; and 2) the ALJ failed to properly evaluate the opinion of Vijaya Chintala, M.D. (*See* ECF 14). The Court will address each in turn.

### A. The ALJ properly developed the record and did not err in exercising his discretion not to order a consultative examination or obtain additional medical expert testimony.

The ALJ has a duty to fully develop the record when evaluating an applicant's claim for disability benefits. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). An ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (5th Cir. 2001). The decision whether to order a consultative examination to aid in developing the record falls within the discretion of the ALJ. 20 C.F.R. §§ 404.1519a, 416.1919a. The controlling regulation states that an ALJ "may ask [a claimant] to undergo a consultative examination" if the agency has "insufficient evidence to determine whether [a claimant] [is] disabled, or if after weighing the evidence [the agency] cannot reach a conclusion about whether or not [a claimant] is disabled." 20 C.F.R. § 1520b(c)(3). An ALJ therefore is not required to order a consultative examination where the record is already complete. *See, e.g., Brock v. Chater*, 84 F.3d 726, 728

(5th Cir. 1996) (noting that the agency's duty to develop the record is satisfied where the ALJ reaches "an informed decision based on specific facts"). The Fifth Circuit has held that "the absence of a medical source statement about a plaintiff's ability to work does not, by itself, make the record incomplete." *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. 2005) (slip copy) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). Courts instead look to whether substantial evidence exists in the record to support the ALJ's decision. *Id.*; *see Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) ("[T]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision."). An ALJ may properly make a disability determination that does not expressly adopt any medical opinion when it is based on substantial evidence. *See Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (finding that although the ALJ did not adopt the state agency report or accept the testimony of a medical provider, this did not preclude a finding that his decision was based on substantial evidence); *Joseph-Jack v. Barnhart*, No. 03-30277, 80 F. App'x 317, 318 (5th Cir. 2021) (rejecting the argument that the ALJ was not competent to assess the RFC because the record did not contain an RFC assessment by a medical source).

Here, the Court finds that the ALJ's determination was supported by substantial evidence, and electing not to order a consultative examination or obtain additional medical expert testimony was an appropriate exercise of his discretion, given the completeness of the record in this case. The ALJ noted that in September 2020:

> [Plaintiff] reported stable mood with no mood fluctuation or aggression. She denied increasing irritability, agitation, anger, racing thoughts or flights of ideas, sadness, hopelessness and anhedonia. Her energy level was within normal limits. She denied difficulty with sleep initiation and maintenance, feeling overwhelmed or panicky, or having auditory and visual hallucinations. She was requesting to continue with ongoing treatment plan. Mental status exam revealed that the claimant was

> cooperative. Her insight, judgment, and impulse control were fair. Her recent and remote memory were intact. Her concentration and attention were normal. Her mood sounded euthymic. Her affect was mood congruent. Her thoughts were logical and organized . . . . The claimant reported doing well in October 2020, and she was continued on her medications.

(ECF 11-1 at 17). The ALJ further noted that Plaintiff reported "stable mood" in December 2020. (*Id.*). In March 2021, Plaintiff reported that she was "doing well on her medications" and "reported stable mood, and denied sadness, hopelessness, and racing thoughts." (*Id.*). In March 2022, Plaintiff reported that her mental health symptoms had returned, and these symptoms fluctuated until September and December 2022, when she "reported doing well." (*Id.* at 18-19). When a Functional Disability Assessment[4] was performed in March 2023, the resulting opinion noted that Plaintiff "had substantial loss in ability to cope with normal work stress and finish a normal work week without interruption from psychologically based symptoms," and reflected that Plaintiff "had crying spells, difficulty thinking/confusion, chronic depression, anhedonia, low energy, appetite disturbance, chronic disturbance of mood, hallucinations/delusions, sleep disturbance, psychomotor agitation, and anger outbursts." (*Id.* at 19-20).

When evaluating Plaintiff's mental health history, the ALJ noted that "claimant reported limitations with memory and completing tasks; however, she also reported she could handle most personal care tasks, prepare meals, manage finances, and follow spoken instructions. The claimant was generally orientated, and her memory was generally intact." (ECF 11-1 at 22). The ALJ noted that the claimant reported limitations with mood management, but is generally cooperative, and "reported improved mood with medications." (*Id.* at 22-23). The ALJ found that Plaintiff has a moderate limitation with regard to "concentrating, persisting or maintaining pace," basing this

---

[4] The ALJ ultimately found the opinion of the provider who performed this Assessment unpersuasive, because it was "not supported by the claimant's treating notes at Metrocare, and they are inconsistent with the record as a whole, which shows that the claimant had improved mental health with medications. Overall, these opinions exceed the claimant's reported symptomology and the observations during the mental health treatment . . ." (ECF 11-1 at 26).

7

finding on the claimant's own reports, providers' notes regarding Plaintiff's difficulty concentrating, and the fact that Plaintiff's concentration and attention were generally normal during exams. (*Id.* at 23). The ALJ noted that Plaintiff reported that she did not handle stress or changes in routine well, but that she "could handle most personal care tasks, do laundry, prepare meals, clean, shop in stores and manage finances." (*Id.*).

The record reflects a lengthy and in-depth history of Plaintiff's mental health symptoms and treatment, and it is clear that the ALJ considered providers' opinions, as well as Plaintiff's own testimony and reports when determining the extent of Plaintiff's mental limitations. Courts have held that relying on the medical record, as well as the testimony of the Plaintiff, can provide the requisite substantial evidence forming the basis of a valid decision by an ALJ. *See Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. 2005) (slip copy) (holding that the ALJ's decision was supported by substantial evidence when it was made based on the plaintiff's own testimony about her daily capacity, the ALJ's observation of the plaintiff at the hearing, and the medical evidence demonstrating improvement in certain conditions rather than further degeneration). Accordingly, the record does reflect substantial evidence to support the ALJ's decision, and he was therefore not required to obtain a medical source statement or obtain additional expert testimony. As demonstrated above, the ALJ discussed Plaintiff's mental health treatment history at length, and provided an adequate evidentiary foundation for his findings.

Although the record may, as Plaintiff asserts, "[lack] an opinion of Plaintiff's mental capabilities from an agency source with access to the more recent pertinent evidence," this does not change the analysis. *See Johnny M. v. Saul*, No. 5:20-CV-173-BR, 2022 WL 9597736, at *4 (N.D. Tex. Jan. 21, 2022) ("Although there is no medical source statement describing the types of work Plaintiff can perform, the ALJ's RFC determination is supported by substantial

evidence . . ."); *Myers v. Saul*, No. SA-20-CV-00445-XR, 2021 WL 4025993, at *8 (W.D. Tex. Sept. 3, 2021) (finding substantial evidence supported RFC determination, even without a medical opinion on the plaintiff's ability to work); *Gonzalez v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *9 (N.D. Tex. Jan. 11, 2016) (finding substantial evidence supported RFC determination, even though record contained no medical opinion regarding the plaintiff's ability to work, where no treating physician recommended any serious restrictions).

The ALJ makes an RFC determination based on all the relevant medical and other evidence in the record; such a finding "does not constitute an improper medical opinion by the ALJ but instead an assessment of Plaintiff's capacity to work based on all of the evidence in the case record." *Minesha R. v. Berryhill*, No. 3:17-CV-2080-G-BN, 2018 WL 3829805, at *4 (N.D. Tex. July 16, 2018), *adopted by* No. 3:17-CV-2080-G-BN, 2018 WL 3820121 (N.D. Tex. Aug. 10, 2018); *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) ("We also reject Joseph-Jack's argument that because the record was devoid of [an RFC] assessment by a medical source, the ALJ was not competent to assess her RFC. It is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion."). The determination of the RFC is the "sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). As discussed, the ALJ adequately considered Plaintiff's mental health limitations, and substantial evidence exists in Plaintiff's medical records and in the substance of the ALJ's discussion to support the ALJ's finding that Plaintiff had the RFC to perform light work.

### B. The ALJ did not err in finding the opinion of Vijaya Chintala, M.D., unpersuasive.

Second, Plaintiff argues that the ALJ erred by finding the opinion of Vijaya Chintala, M.D., unpersuasive without properly articulating his consideration of the factor of consistency in determining the persuasiveness of Dr. Chintala's opinion. (ECF 14 at 18-20). In evaluating claims

9

filed on or after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018). Instead, the ALJ must consider five factors: 1) supportability; 2) consistency; 3) relationship with the claimant (including (a) length of the treatment relationship, (b) frequency of examinations, (c) purpose of the treatment relationship, (d) extent of the treatment relationship, and (e) examining relationship); 4) specialization; and 5) other factors, such as familiarity with the other evidence in the claim or an understanding of disability policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c). "The most important factors" for the ALJ to consider in "evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . ." *Id.* § 404.1520c(a).

Therefore, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [a claimant's] determination or decision," and may, but is not required to, explain how he considered the other three factors.[5] *Id.* § 404.1520c(b)(2). The ALJ's discussion of the factors of supportability and consistency "is not confined to the specific discussion of the opinion itself but is considered in light of the entire RFC discussion and the evidence discussed therein." *Garner v. Kijakazi*, No. 1:22-CV-0563-DH, 2023 WL 1976713, at *5 (W.D. Tex. Feb. 13, 2023) (collecting cases). When one medical source provides multiple opinions, the ALJ is not required to "articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and

---

[5] A limited exception—not discussed here—exists, where the remaining three factors must be articulated if there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well-supported . . . and consistent with the record . . . but are not exactly the same . . . ." 20 C.F.R. § 404.1520c(b)(3).

10

prior administrative medical findings in [a] case record." 20 C.F.R. § 404.1520c(b)(1). The SSA makes clear that "[i]t is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a] case record." *Id.* § 404.1520c(b)(1). As a general matter, "there are no formalistic rules governing how an ALJ must articulate his decision." *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (citing *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)). "Nor is perfection the benchmark in administrative proceedings." *Id.* (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). Rather, "[a]t a minimum, the ALJ's discussion must give enough reasons to permit meaningful judicial review." *Id.* (citing *Kinney v. Astrue*, No. 5:09-cv-00008-C-BG, 2009 WL 2981907, at *3 (N.D. Tex. Aug. 28, 2009)).

It is the responsibility of the factfinder to weigh the evidence and make a determination as to the persuasiveness of a particular medical opinion. *See Turner-Clewis v. Saul*, No. 4:20-CV-372-A, 2021 WL 2302770, at *9 (N.D. Tex. May 19, 2021), *report and recommendation adopted*, No. 4:20-CV-372-A, 2021 WL 2291738 (N.D. Tex. June 4, 2021); *see also* 20 C.F.R. § 404.1545(a)(3); *Collie v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 909618, at *6 (N.D. Tex. Feb. 1, 2021). When contradictory evidence exists in the record, it is the duty of the factfinder to consider the entirety of the record together to make a finding on credibility. As stated above, this Court is not engaged in *de novo* review of the ALJ's decision; rather, review is limited to whether the Commissioner applied the correct legal standards, and whether his decision is supported by substantial evidence in the record as a whole. *See* discussion *supra* Section II. "A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision." *Turner-Clewis*, 2021 WL 2302770, at *1; *see Kane v. Heckler*, 731 F.2d

1216, 1219 (5th Cir. 1984) ("The court may not reweigh the evidence or try the issues *de novo* or substitute its judgment for that of the [Commissioner].").

Here, Dr. Chintala performed a physical examination of Plaintiff on April 7, 2021 for a disability evaluation. (ECF 11-2 at 729-734). Dr. Chintala in her report noted that Plaintiff suffers from multiple conditions, and noted that Plaintiff's "current ability to do work related activities such as sitting is slightly limited. Her ability to stand, walk, lift, carry, and handle objects is limited . . . ." (ECF 11-2 at 732) (noting that Plaintiff suffers from "1. Diabetes Millitus 2 on pills with neuropathy. 2. Degenerative Disc Disease of lumbosacral spine with pain. 3. Hypertension. 4. Hyperlipidemia. 5. Osteoarthritis of knee and shoulder with pain. 6. Plantar fasciitis. 7. History of bipolar disorder on medicines . . . .").

The ALJ in issuing his decision stated:

> "The opinions of Dr. Chintala are not very persuasive. Although the record supports some limitations with sitting, standing, and walking, Dr, [sic] Chintala failed to express these limitations in vocational terms. Furthermore, Dr. Chintala provided limited support for her opinion, showing, for example, that the claimant reported having difficulty sitting and walking, and reported being able to lift only ten pounds, and that she reported being unable to do things like open jars or button clothes with her hands, but that she was observed to exhibit a normal ability to hear and understand conversational voices. Additionally, her opinion concerning the claimant's ability to handle objects with her hands seems inconsistent with her own report, discussed above, showing that she observed her to exhibit normal range of motion throughout her upper extremities, with intact grip strength, normal fine finger movements, further noting that she was in fact able to handle small objects and button clothing during the examination."

(ECF 11-1 at 26) (internal citations omitted).

Plaintiff asserts only that the ALJ did not adequately articulate the level of consistency present in Dr. Chintala's medical opinion, and does not contest the supportability of the determination. (ECF 14 at 14-16). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical

sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

The Court concludes that the ALJ sufficiently explained "consistency" when he noted that Dr. Chintala's opinion concerning Plaintiff's "ability to handle objects with her hands seems inconsistent with her own report . . . showing that she observed [Plaintiff] to exhibit normal range of motion throughout her upper extremities . . . further noting that she was in fact able to handle small objects and button clothing . . . ." (ECF 11-1 at 26). Dr. Chintala notes in her report that a physical examination of Plaintiff demonstrated that Plaintiff had "[n]o joint tenderness or enlargements" and "[n]ormal range of motion in the right upper and lower extremities and left upper and lower extremities. (ECF 11-2 at 731). Dr. Chintala's report also reflects that Plaintiff's right and left hand grips were "5/5, normal and symmetric." (*Id.*). Dr. Chintala noted "[n]o evidence of fasciculation or atrophy," that Plaintiff's [f]ine finger movements are normal," and that Plaintiff "[h]as the ability to handle small objects and button clothing." (*Id.*). The report does, however, include a note that Plaintiff stated that "she can hold a coffee cup . . . can hold a skillet, cannot sweep with a broom, cannot button her clothes, and cannot lift any weight above head." (*Id.* at 730). The report also states that Plaintiff reported "joint pain of . . . both hands" as well as "[n]umbness and tingling of left hand." (*Id.*). Dr. Chintala, after hearing Plaintiff's statements and conducting a physical exam, noted that Plaintiff's "current ability to do work related activities such as sitting is slightly limited. Her ability to stand, walk, lift, carry, and handle objects is limited due to medical problems." (*Id.* at 732).

Elsewhere in the ALJ's decision, outside of the specific discussion of Dr. Chintala's opinion, the ALJ further discusses evidence in the record that would call into question the consistency of Dr. Chintala's opinion. *See Garner v. Kijakazi*, No. 1:22-CV-0563-DH, 2023 WL

1976713, at *5 (W.D. Tex. Feb. 13. 2023). For example, Dr. Chintala's opinion indicated that Plaintiff has difficulty walking, (ECF 11-2 at 732), but the ALJ noted that although Plaintiff had minimal tricompartmental osteoarthritic changes in the left foot, other records show that Plaintiff had good strength and a normal gait. (ECF 11-1 at 24).

In this case, it is clear that the ALJ adequately articulated his consideration of the consistency of the medical opinion. The ALJ clearly stated that Dr. Chintala's opinion regarding the claimant's ability to handle objects with her hands "seems inconsistent with her own report," particularly Dr. Chintala's observations that Plaintiff exhibited intact grip strength, normal fine finger movements, and was able to handle small objects and button clothing. (ECF 11-1 at 26). Because it is the duty of the ALJ to consider the entirety of the record and make a finding on credibility, it was within the discretion of the ALJ to determine that the inconsistencies in Dr. Chintala's report were sufficient to support a finding that Dr. Chintala's opinion was not very persuasive. The ALJ considered Dr. Chintala's opinion in its entirety, weighed the opinion against Dr. Chintala's examination notes and information contained in other medical records, and made a determination as to the persuasiveness of the opinion. The Court finds that the ALJ adequately articulated the basis of this determination in his decision and that the determination is supported by substantial evidence.

## IV.   CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

ENTERED May 14, 2024.

_LEE ANN RENO_
UNITED STATES MAGISTRATE JUDGE